IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:18-CR-127 (TJM) |
| | ) | |
| v. | ) | **Plea Agreement** |
| | ) | |
| **SHANNON HARDY SEKEL,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, and defendant **SHANNON HARDY SEKEL**

(hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into

the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal

Procedure:

1)     **The Defendant's Obligations:**

    a)  **Guilty Plea:** The defendant will waive indictment and plead guilty to Count One and Two

       of the information in Case No.  5:18-CR-127 (TJM) charging one count of Conspiracy to

       Commit Theft of Government Property, in violation of 18 U.S.C. §§ 641 and 371, and one

       count of Bank Fraud in violation of 18 U.S.C.  § 1344(2).

    b)  **Special Assessment:**   The defendant will pay an assessment of $100 per count of

       conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money

       order to the Clerk of the Court in the amount of $200, payable to the U.S. District Court,

       at the time of sentencing.

    c)  **Compliance with Other Terms of Agreement:** The defendant will comply in a timely

       manner with all of the terms of this plea agreement.

d) **Restitution:** The defendant will consent to entry of an order directing the defendant's payment of restitution in the following amounts to the following victims, whether or not the losses suffered by those victims resulted from the offenses of conviction: $117,742.03, jointly and severally with her co-defendant, to the Social Security Administration.

e) **Forfeiture:** Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461, 18 U.S.C. § 982(a)(2) and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Forfeiture Allegation in the information described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

(1) A money judgement representing the unrecovered proceeds in an amount that does not exceed $56,697.77.

(2) If any of the property described above, as a result of any act or omission of the defendant, either: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e).

2) **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the information in Case No 5:18-CR-127(TJM) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea,"

2

occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3)    **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Maximum term of imprisonment:**

    <u>Count One</u>: 5 years, pursuant to 18 U.S.C. § 371.

    <u>Count Two</u>: 30 years, pursuant to 18 U.S.C. § 1344.

b) **Maximum Fine:**

    <u>Count One</u>: $250,000, pursuant to 18 U.S.C. § 3751.

    <u>Count Two</u>: $1,000,000, pursuant to 18 U.S.C. § 1344.

c) **Supervised release term:** In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to 5 years, to begin after imprisonment. *See* 18 U.S.C. § 3583. A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 3 years.

d) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4)    **Elements of Offenses:** The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

3

Count One:

    a) Two or more persons entered the unlawful agreement charged in the Information;

    b) That the defendant knowingly and willfully became a member of the conspiracy;

    c) That one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Information; and

    d) That the overt act was committed to further some objective of the conspiracy.

Count Two:

    a) That the defendant knowingly obtained the money, funds credits, assets, securities, and other property owned by or under the custody and control of a financial institution;

    b) That the defendant did so by means of false and fraudulent pretenses, representations, and promises; and

    c) That the financial institution was then insured by the Federal Deposit Insurance Corporation.

5)    **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

    a.     The Social Security Administration ("SSA") is an independent agency of the United States within the United States government that administers programs under the Social Security Act, Title 42, United States Code, Section 301, et seq. ("the Act"). These programs include the Social Security Old-Age, Survivors, and Disability Insurance and related programs under Title II of the Act. These programs also include the Supplemental Security Income for the Aged, Blind, and Disabled and related programs under Title XVI of the Act ("SSI program").

4

b.      The Title II Program includes the Retirement Insurance Benefits Program that pays monthly cash benefits to individuals who worked and paid taxes into Social Security. To be eligible for monthly cash benefits, individuals must have reached the age of 62 and paid a portion of their prior wages into the program. Benefits are determined based on average salary and number of years of employment. Retirement benefits continue until the recipient dies.

c.      The Title II Program also includes the Disability Insurance Benefits Program. Like the Retirement Insurance Benefits Program, the Disability Insurance Benefits Program provides for payment of disability benefits to medically "disabled" individuals who are "insured" under the Act by virtue of their contributions to the Social Security trust fund through the Social Security tax on their earnings.

d.      The SSI Program pays monthly cash benefits to individuals found by SSA to be medically disabled, and who have, in addition, been found by SSA to be eligible for the SSI Program on the basis of financial need, as determined in relation to both "income" and "resources" (as those terms are defined for purposes of the Act)..

e.      D.W. was a SSA beneficiary who received disability benefits from July 1991 until June 2007, when he attained the age of eligibility for retirement benefits. Consequently, in July 2007, D.W. automatically began receiving retirement benefits instead of disability benefits. The SSA benefits were paid via direct deposit into D.W.'s checking account at Citizens Bank up to, and including, May 2013.

f.      D.W. was last seen alive in or around 2006. On May 1, 2013, D.W.'s skeletal remains were found in the backyard of the residence at 59 Flint Avenue, Little Falls, New York, inside a dog crate. This residence was D.W's last known address. The remains were wrapped in multiple layers of garbage bags and blankets and were in an advanced stage of decomposition;

D.W. had been deceased for a period of years. The medical examiner opined that the state of remains were consistent with the date he was last seen alive, that is in or around 2006.

      g.      Unaware of D.W.'s death, SSA continued to deposit retirement benefits into D.W.'s Citizens Bank account, until shortly after the discovery of his skeletal remains on May 1, 2013. Upon his death, D.W. was no longer entitled to receive SSA benefits.

      h.      From in or around 2007, an unindicted co-conspirator began writing checks from the funds in D.W.'s Citizens Bank account, funds derived solely from the deposit of D.W.'s SSA benefits.

      i.      Beginning January 2009, until April 2013, **SHANNON HARDY SEKEL** obtained funds from D.W.'s SSA benefit payments by utilizing a third party to endorse and cash approximately 14 forged checks drawn from D.W.'s Citizens Bank account. Sekel utilized the unindicted co-conspirator's bank account for deposit of forged checks written on D.W.'s account, then the withdrawal of those funds from D.W.'s account.

      j.      The unindicted co-conspirator forged the signature of D.W. on D.W.'s Citizens Bank checks; **SEKEL** was aware that the signature of D.W. was forged. When **SEKEL** used the unindicted co-conspirator's bank account for deposit, then withdrawal of the funds, **SEKEL** and the unindicted co-conspirator would share the funds withdrawn from D.W.'s account.

      k.      In October 2009, and again in March 2011, the unindicted co-conspirator ordered new checkbooks for D.W's Citizens bank account when D.W.'s checks had run out. The unindicted co-conspirator signed D.W.'s name to some of the checks and gave them to **SEKEL**. **SEKEL** filled in the check and used the funds from cashing the forged checks for her benefit, knowing she did not have D.W.'s permission to take or use his funds, or to write or cash checks

6

on his behalf as **SEKEL** hadn't seen or spoken to D.W. since summer 2006, and the unindicted co-conspirator hadn't seen or spoken to D.W. since before 2007.

l.      **SEKEL** and the unindicted co-conspirator fabricated explanations about the source of the monies received from D.W.'s account, the whereabouts of D.W., and **SEKEL's** care-taking responsibilities for D.W., to reduce suspicions regarding their use of D.W.'s checks and D.W.'s SSA benefits long after his death and disappearance.

m.      In October 2012, the unindicted co-conspirator gave **SEKEL** multiple checkbooks for D.W.'s bank account with the checks already signed. Thereafter, **SEKEL** and the unindicted co-conspirator went to the bank together every third of the month to cash one of D.W.'s checks; both **SEKEL** and the unindicted co-conspirator kept a portion of the proceeds from each check cashed.

n.      On January 3, 2013, check number 4030, endorsed by the unindicted co-conspirator, in the amount of $900, drawn on D.W.'s Citizens Bank account, was deposited into the unindicted co-conspirator's Bank of America account; **SEKEL** is captured on video surveillance at the walk-up automated teller machine ("ATM") at Bank of America on January 3, 2013 and a $300 withdrawal of cash via the ATM was recorded.

o.      On January 7, 2013, **SEKEL** and the unindicted co-conspirator are captured on video surveillance at the drive-through at the Bank of America, cashing check number 4032, drawn on D.W.'s Citizens Bank account, in the amount of $30. Check 4032 was endorsed by the unindicted co-conspirator and made payable to the unindicted co-conspirator.

p.      From January 2009 through April 2013, **SEKEL** received disbursements from D.W.'s account totaling $38,860.49, knowing D.W. did not give her permission to take or use the funds, or to cash checks from his account, and knowing that the checks were forged by the

7

unindicted co-conspirator. The unindicted co-conspirator received disbursements from D.W.'s account totaling $46,154.50, in the form of checks and check card purchases, knowing D.W. did not give permission to take the funds, or to cash checks from his account. From September 27, 2010, through April 2013, **SEKEL** endorsed and cashed over 30 checks written from D.W.'s Citizens Bank account. **SEKEL** and the unindicted co-conspirator were further responsible for $17,837.28 for checks written, and fees charged to D.W.'s account, all of which were taken without permission by D.W.

q.      **SEKEL** and the unindicted co-conspirator did unlawfully knowingly, and willfully, conspire, combine, confederate and agree to commit offenses against that United States, that is: to embezzle, steal, purloin, and knowingly convert to their own use and the use of another, any money of the United States and any department and agency thereof, that is the Social Security Administration, for a value that exceeded $1,000.

r.      On April 13, 2013, **SEKEL** uttered and negotiated a forged bank check, that is, check #4040, made payable to "Shannon Hardy", with the forged signature of D.W. in the amount of $1200 and drawn on Citizens Bank with the intent to obtain bank property, that is the funds of Citizens Bank

s.      The total unrecovered proceeds, that is money obtained by the defendant as a result of the offenses charged in Count One and Count Two, that has not been located upon the exercise of due diligence, does not exceed $56,697.77.

6)      **<u>Sentencing Stipulations:</u>**

   a)  The parties agree that the base offense level is seven (7) pursuant to U.S.S.G. §2B1.1(a)(1).

   b)  The parties agree that the loss is more than $15,000, but less than $40,000, resulting in an addition of four (4) levels pursuant to U.S.S.G. §2B1.1(b)(1)(C)

8

c) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

7)    **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a) The conviction(s) resulting from the defendant's guilty plea;

b) Any sentence to a term of imprisonment of 27 months or less;

c) Any sentence to a fine within the maximum permitted by law;

d) Any sentence to a term of supervised release within the maximum permitted by law;

e) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

9

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right. Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination. The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Court is neither a party to, nor bound by this Plea Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office. If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

10

federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

## E. Sentencing:

a. **Maximum terms of imprisonment:**   The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement.   If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

b. **Mandatory minimum terms of imprisonment:**   If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment.   In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies.   Such exception may be dependent on a motion by the government.

11

c. **Section 851 Enhancements:** The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d. **Sentencing guidelines:**

   i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

   ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

   iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level

12

different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the

13

Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g. **Government's Discretion to Recommend a Sentence:** Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more

14

supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

15

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

a. The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth

16

above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

b. The defendant consents to the entry of an order of forfeiture of the assets described above.

c. The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents. The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court. The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d. Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture. Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e. In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party. The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f. The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to

17

transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.   The defendant waives the right to a jury trial on the forfeiture of assets. The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.   The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.   The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.   The defendant acknowledges joint and several liability for the amount of any money judgment set forth above.

k.   In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property. The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

**I.   Determination of Financial Condition and Payment of Interest and Penalties:**

18

a. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b. The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c. The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d. Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**J. Remedies for Breach:**

a. Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part. In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which

19

the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b. If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

   i. To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

   ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

   iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

   iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

   v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

20

vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below. No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary

21

and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

GRANT C. JAQUITH
Acting United States Attorney

_Tamara B. Thomson_                                    4\25\18
Tamara B. Thomson                                       Date
Assistant United States Attorney
Bar Roll No. 515310

_Shannon Hardy Sekel_                                  4/25/18
SHANNON HARDY SEKEL                                     Date
Defendant

_Robert G. Wells_                                      4/25/18
Robert Wells                                            Date
Attorney for Defendant
Bar Roll No. 505778

22